**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James Lee FARMER, Appellant.**

Superior Court of Pennsylvania.

Argued May 17, 2000.

Filed July 14, 2000.

Reargument Denied Sept. 20, 2000.

Raymond Radakovich, Pittsburgh, for appellant.

Lisa M. Schlosser, Asst. Dist. Atty., Erie, for Com., appellee.

Before KELLY, FORD ELLIOTT, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 James Farmer appeals his convictions for rape, involuntary deviate sexual intercourse, indecent assault, and unlawful restraint. We affirm.

¶ 2 On March 9, 1998, appellant and the victim, were among several people at the CYS bowling club in Erie, Pennsylvania. The victim was at the club with her sister, Judith Freeman, and her friend, Patricia Wydro. The women bowled from 6:15 p.m. until 9:00 p.m. During that time, the victim consumed two or three alcoholic drinks. After bowling, the women proceeded to the bar and met with a male friend. Appellant was also in the bar with friends. The victim and appellant were unacquainted to this point.

¶ 3 Appellant began having a conversation with Ms. Freeman and Ms. Wydro, who were conversing with other friends. At some point Ms. Freeman went over to the victim and pointed out appellant's resemblance to a relative. Soon after, appellant told his friends that he was leaving and the victim indicated that she was tired and wanted to go home. Appellant and the victim subsequently had sexual relations in his car in the parking lot. The court below found:

> As the victim left the bowling alley, [a]ppellant grabbed her shoulders, physically pushed her backwards and pushed her to his vehicle. Once inside the vehicle, [he] grabbed [her] head [and] . . . used his body to hold her down . . . . she pushed in resistance, including pushing her bowling ball at [him] . . . . she was unable to run away from [him].

Trial Court Opinion, 10/13/99, at 3. Appellant then had sex with the victim, who was menstruating at the time. Following the encounter, she returned to the bowling alley, where several people described her as "hysterical, distraught and disheveled." *Id.* She recounted the incident and some-

one called the police. She was taken to a hospital and had a post-rape medical examination. Appellant claimed that the encounter was consensual, but was later arrested for the attack.

¶ 4 On March 23, 1999, a jury found appellant guilty of rape, involuntary deviate sexual intercourse, indecent assault, and unlawful restraint. After the court below denied his post-sentence motions, he filed this appeal.

¶ 5 Appellant frames several issues for our review:

1. Whether a new trial should be granted due to trial counsel's ineffective assistance based on (1) failing to request that the Court provide a specific jury instruction concerning the need to consider Mr. Farmer's criminal intent where counsel elicited substantial evidence that the defendant held a "reasonable mistake as to consent" and then emphasized this theory as the theme of his closing argument to the jury; (2) for failing to object to statements made by the prosecution during closing argument alleging that defendant's "presumption of innocence" was no longer present; (3) for failing to call vital eyewitness William Scott Stadler in support of Mr. Farmer; (4) for failing to call any character witnesses in support of Mr. Farmer; and (5) for never giving defendant the opportunity to request a "lesser included offense" charge?

2. Whether a new trial should be granted based upon the following errors of Court: (1) refusing to grant a mistrial based upon the inflammatory and irrelevant testimony of Judy Freeman and Pat Wydro; (2) for prohibiting defense counsel's use of clearly exculpatory evidence in the form of the alleged victim's medical/mental history; and (3) for allowing the prosecution to present prejudicial and irrelevant testimony regarding the alleged victim's "post-rape" medical examination?

3. Whether defendant should be acquitted on the rape charge, in light of *Commonwealth v. Berkowitz*, after the court below erred in ruling that a sufficient amount of force was present to reach the level of "forcible compulsion" when evidence showed that no violence or threats of violence were made by the defendant to the alleged victim?

4. Whether defendant's sentence should be reconsidered and modified as a result of the below Court's failure to consider the full mitigating range of sentencing including the absence of actual violence, defendant's advanced age, defendant's negative medical condition, and the alleged victim's failure to appear at sentencing or to submit an "impact" statement?

5. Whether an evidentiary hearing should be granted in order to determine the above matters and to complete the above factual and evidentiary record?

Brief for Appellant at 3–4.[1]

■ ¶ 6 Appellant's first five claims involve alleged trial counsel ineffectiveness. Before we begin, we note that

[t]he law assumes that counsel was effective, and the burden is on appellant to prove otherwise. To do so, he must demonstrate that his underlying claim has arguable merit, that counsel had no reasonable basis for his action or inaction, and that he was prejudiced as a result. Counsel is not ineffective for failing to advance a meritless claim.

*Commonwealth v. McSloy*, 751 A.2d 666, 668 (Pa.Super.2000).

■ ¶ 7 Appellant first argues that trial counsel was ineffective for failing to request a jury instruction regarding a reasonable mistake as to consent. He claims that *Commonwealth v. Fischer*, 721 A.2d 1111 (Pa.Super.1998), *appeal dismissed as improvidently granted,* 560 Pa. 410, 745 A.2d 1214 (2000), "sent a clear signal that Pennsylvania law was ready to require a charge as to defendant's mental state when at issue." Brief for Appellant at 25.[2]

¶ 8 We first look to *Commonwealth v. Williams*, 294 Pa.Super. 93, 439 A.2d 765 (1982), as the Court relied on it in *Fischer*, 721 A.2d at 1118. In *Williams*, the defendant argued that the trial judge

should have instructed the jury that if [he] reasonably believed that the [victim] had consented to his sexual advances that this would constitute a defense to the rape. . . . If the element of the defendant's belief as to the victim's state of mind is to be established as a defense to the crime of rape then it should be done by our legislature which has the power to define crimes and offenses. We refuse to create such a defense.

*Williams*, 439 A.2d at 769 (citations omitted). In *Fischer*, appellant claimed that his trial counsel was ineffective for failing to request a mistake of fact instruction, as in *Williams* and the case at hand. *See Fischer*, 721 A.2d at 1113. The Court found some merit to his claim, but in reliance on *Williams*, ultimately decided that

Because this appeal raises ineffective assistance of counsel, we are required to find that appellant's trial lawyer made a mistake. That mistake is the failure to ask the trial court for an instruction that the *Williams* case held is unwarranted.

---

1. We guide appellant's counsel to Pa.R.A.P. 2116(a), which states that "[t]he statement of questions involved . . . should not ordinarily exceed 15 lines, [and] *must never exceed one page* . . . . This rule is to be considered in the highest degree mandatory." Pa.R.A.P. 2116(a) (emphasis added). While appellant's statement of questions exceeds this, we can still conduct meaningful review.

2. Appellant mistakes the Court's language in *Fischer*. He claims that the Court said: "To ask a jury to consider whether the defendant used 'intellectual or moral' force, while denying the instruction as to how to consider defendant's mental state at the time of the alleged encounter is patently unfair to the accused." Brief for Appellant at 25. In truth, the Court was quoting from appellant's brief to explain his argument. *See Fischer*, 721 A.2d at 1117.

In other words, we would have to find that counsel's failure to argue for a change in the law constituted ineffectiveness. This, of course, is not possible. We simply cannot announce a new rule of law and then find counsel ineffective for failing to predict same.

Assuming that we have the authority to declare that the instruction is one to which appellant *should* be entitled, we cannot hold that counsel erred in failing to demand it. The relief appellant seeks represents a significant departure from the current state of the law.

*Id.* at 1118. Appellant now argues that his trial counsel should have been on notice that the law in Pennsylvania was changing due to the Court's decision in *Fischer*. We are not convinced that the law in Pennsylvania actually was changing, as *Fischer* expressly held that such an instruction would be "a significant departure from the current state of the law." *Id.* Indeed, if trial counsel attempted to follow *Fischer*, he or she would not ask for the instruction. Appellant's claim thus fails.

▪ ¶ 9 Appellant next contends that trial counsel was ineffective for failing to object to certain statements made by the prosecutor during his closing argument:

You've heard terms like reasonable doubt, presumption of innocence, standard of proof. Yes, it is my burden, I must prove him guilty. Yes, he is presumed innocent. Some call it the cloak of innocence, that we are cloaked in innocence when we go to trial unless and until proven guilty. I submit to you, the testimony submitted to you has taken that cloak away. Mr. Farmer is no longer cloaked in innocence. Just as sure as he's sitting there, he's guilty of each and every count that he is charged with. So forget about the presumption of innocence, because it's gone. It was there before trial, but here we are after trial and it is gone.

N.T., 3/25/99, at 23–24. Appellant claims that the prosecutor improperly shifted the burden of proof by making such statements, and thus that his trial counsel was ineffective for failing to object. We disagree.

▪ ¶ 10 First, "[i]n determining whether a prosecutor's statement was proper, we view it not in isolation, but rather in the context in which it was made." *Commonwealth v. Moody*, 439 Pa.Super. 563, 654 A.2d 1120, 1122 (1995). The statements here, when taken as a whole, are not improper. The prosecutor described the correct burden of proof, then told the jury that he met his burden. We see no error in doing so. Moreover, the trial court corrected any error when it issued jury instructions after closing arguments:

Now, it is a fundamental principle of our system of criminal law that a person is presumed to be innocent. The mere fact that a person is arrested and accused of a crime is not any evidence against him. The defendant is presumed innocent throughout this trial unless and until you conclude based on careful and impartial consideration of the evidence that the Commonwealth has proven him guilty beyond a reasonable doubt.

* * *

So you may not find the defendant guilty based on a mere suspicion of guilt. The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, the defendant is no longer presumed guilty. If it doesn't meet that burden, then you must find him not guilty.

N.T., 3/25/99, at 51–53. There is no evidence that the jury ignored the charge, and, "[a]bsent evidence to the contrary, the jury is presumed to have followed the court's instructions." *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 273 (2000). This instruction was sufficient to clear up any confusion the prosecutor may have caused with his statements. Thus,

trial counsel was not ineffective for failing to object to the above statements.

¶ 11 Appellant next claims that trial counsel was ineffective for failing to call William Scott Stadler, who apparently saw appellant and the victim in the parking lot, and various unnamed character witnesses to testify on his behalf.

To prevail on a claim of trial counsel's ineffectiveness to call a witness, the [appellant] must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

*Fletcher*, at 274–75. Here, appellant asserts that "Mr. Stadler was known to trial counsel and was available and willing to testify." Brief for Appellant at 27. Regarding the character witnesses, he states, "[k]nown to trial counsel were a wealth of family members and friends, including Mr. Farmer's wife, who were available and willing to testify on his behalf." *Id.* at 27–28. He also states that "[a] plethora of citizens were [sic] willing to come forward and testify." *Id.* Be that as it may, appellant has failed to include any affidavits from Mr. Stadler, appellant's family, appellant's friends, appellant's wife, or any member of the "plethora" of potential witnesses. This dooms appellant's claim because we "will not grant relief based on an allegation that a certain witness may have testified in the absence of an affidavit to show that the witness would, in fact, testify." *Commonwealth v. Days*, 718 A.2d 797, 803 (Pa.Super.1998). While appellant does include an unsigned, typed statement he says is from a "William Stadler," it is not sufficient. First, it is merely an account of the incident and does not contain any information on whether the writer would be willing to testify. Second, it is not clear that this statement is genuine.

As noted above, there is no signature, and only the first page of the statement is in the record when it appears that it continues to another page. Consequently, appellant's ineffectiveness claim fails.

¶ 12 Appellant next contends that trial counsel was ineffective for failing "to request a charge of a 'lesser included offense' . . . such as [s]exual [a]ssault" pursuant to 18 Pa.C.S.A. § 3124.1. Brief for Appellant at 28. He claims that he was prejudiced by this because this "left the jury with an all or nothing defense." *Id.* Again, we note that

[t]he law assumes that counsel was effective, and the burden is on appellant to prove otherwise. To do so, he must demonstrate that his underlying claim has arguable merit, that counsel had *no* reasonable basis for his action or inaction, and that he was prejudiced as a result. Counsel is not ineffective for failing to advance a meritless claim.

*McSloy*, at 668. Assuming that appellant's claim has arguable merit, we find that trial counsel's action arose from his strategy. "Our review of the record discloses that trial counsel sought a full acquittal for appellant" on the rape charge. *Commonwealth v. Harrison*, 444 Pa.Super. 103, 663 A.2d 238, 241 (1995). "The goal of seeking complete acquittal . . . does not constitute ineffective assistance of counsel." *Id.* Moreover, counsel's strategy does not rise to the level of ineffective assistance unless " 'in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it.' " *Id.* (quoting *Commonwealth v. Garcia*, 370 Pa.Super. 132, 535 A.2d 1186, 1188 (1988)). Appellant concedes that "[o]ften, where counsel's failure to seek a 'lesser included' charge is based on a strategic decision to obtain an outright acquittal . . . challenges to this decision will fail" but, without any further explanation, claims that his counsel's decision prejudiced him. Brief for Appellant at 28. As we stated above, however, an

attorney is not ineffective for seeking acquittal for his or her client unless that was unreasonable. Here, it was not. Furthermore, appellant's entire defense was that the victim consented to the rape. It thus would have made no sense to request a jury instruction on sexual assault, which includes lack of consent as an element. *See* 18 Pa.C.S.A. § 3124.1. Appellant's claim thus fails.

¶ 13 Appellant also claims that the court below erred in refusing to grant a mistrial "based upon the inflammatory and irrelevant testimony of Judy Freeman and Pat Wydro." Brief for Appellant at 3. He does not point to any specific testimony but instead says that the comments contained "sexual innuendo[e]s or even direct solicitations for sex" and that such testimony put him in "the worst possible light and . . . were in no way relevant." *Id.* "The admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871, 877 (1998). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa. R.E. 401. Here, the trial judge found the testimony relevant. *See* Trial Court Opinion, 10/13/99, at 8. He said that Ms. Freeman, the sister of the victim, "was present to observe both the victim and . . . [a]ppellant at all times leading up to the crimes." *Id.* at 7. He further said that Ms. Wydro also saw appellant's behavior prior to the crimes. *Id.* at 9. Therefore, the judge concluded, the testimony was relevant as to appellant's state of mind. *Id.* at 8, 9. Because appellant does not point to any specific statements he finds objectionable, we deal with the testimony generally. Certainly Ms. Wydro and Ms. Freeman's testimony was relevant to show the course of events leading up to the rape. Because appellant points to no specific statements

that were "inflammatory" or "irrelevant," we can find no abuse of discretion.

¶ 14 Appellant additionally claims that the court below erred when it "restricted defense counsel's use of . . . [the victim's] medical records" because those records were exculpatory. Brief for Appellant at 31. Appellant wanted to introduce the victim's medical records because she had previously been treated for depression with "medication with far reaching side effects." *Id.* Thus, appellant contends, the medical records were directly linked to her "credibility and awareness" and were "clearly exculpatory." *Id.* Again, we review claims of evidentiary error for abuse of discretion. *See Bardo*, 709 A.2d at 877. Here, the court below refused to admit such documents because they did not prove that the victim was on medication or being treated for depression on the date of the rape. *See* Trial Court Opinion, 10/13/99, at 5. The trial court reasoned that admitting such evidence would only cause the jury to

> review . . . the victim's history of past depression and the use of [medication and] infer she must have been depressed and/or using [medication] on the night in question. There is an obvious causal gap in [a]ppellant's argument since [a]ppellant could never establish that . . . she necessarily was depressed and under medication on the night in question.

*Id.* Because appellant could not show that the victim was on medication during the rape, this evidence was irrelevant. We see no abuse of discretion here.

¶ 15 Next, appellant contends that the court below erred "in permitting evidence of the alleged victim's travails through her 'post-rape' medical procedures." Brief for Appellant at 32. Appellant argues that medical evidence regarding the rape "was of no probative value and was done solely to inflame the jury with the alleged victim[']s humiliation at 'disrobing and undergoing a gynecological examination.' " *Id.* Appellant cites no cases for the proposition that rape exami-

nation evidence must be suppressed in a rape case and fails to develop his argument. "Pennsylvania Rule of Appellate Procedure 2119 contains mandatory provisions regarding the contents of briefs. Rule 2119(a) requires the argument to be followed by discussion and pertinent citation of authorities. Additionally, this Court has held that arguments which are not sufficiently developed are waived." *Commonwealth v. Irby,* 700 A.2d 463, 464 (Pa.Super.1997). Because appellant has not sufficiently developed this issue, he has waived it.

¶ 16 Appellant also contends that the court "erred in determining that there [was] sufficient evidence of 'forcible compulsion' so as to submit the counts to the jury." Brief for Appellant at 32. Thus, he says, he should now be acquitted of the rape charge. Appellant relies on *Commonwealth v. Berkowitz,* 537 Pa. 143, 641 A.2d 1161 (1994) to support his argument. We turn to *Berkowitz,* keeping in mind that when we review the sufficiency of the evidence, we "must view the evidence in the light most favorable to the Commonwealth as verdict winner, and accept as true all evidence and reasonable inferences that may be reasonably drawn therefrom, upon which, if believed, the jury could have relied in reaching its verdict." *Id.* at 1163.

¶ 17 In *Berkowitz,* our Supreme Court examined the "forcible compulsion" element of the crime of rape. *See id.* at 1163. In so doing, the Court recalled

"The force necessary to support a conviction of rape ... need only be such as to establish lack of consent and to induce the [victim] to submit without additional resistance.... The degree of force required to constitute rape is relative and depends on the facts and particular circumstance of the case."

*Id.* at 1163 (quoting *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986)). The Court then examined the facts of its particular case and determined that the Commonwealth had not sufficiently proven the element of forcible compulsion. *See*

*id.* at 1164–65. In *Berkowitz,* though, the facts were different than those before us. The complainant in *Berkowitz* testified that the defendant did not physically or verbally threaten her, she did not attempt to exit through a locked door even though she knew how to unlock it, and she said "no" throughout the encounter. *Id.* at 1164. By contrast, the victim here testified that appellant pushed her to his car when she was trying to push him away, *see* N.T., 3/23/99, at 66, she attempted to push appellant away with her bowling ball, *see id.* at 68, 74, she repeatedly told him "no" and that she wanted to go home, *see id.* at 69, appellant held her shoulders down with both hands while he had sexual intercourse with her, *see id.* at 83, and appellant used his body, his arms, and his hands to restrain her, *see id.* at 112. While appellant points to his attorney's cross-examination of the victim, where she testified that appellant had not used weapons, never slapped or punched her, or verbally threatened her, he ignores the victim's testimony on direct examination. *See* Brief for Appellant at 33–34. The case at hand is different than *Berkowitz* in that the level of restraint and force was much greater here. We have no difficulty in holding that the jury could have found forcible compulsion in this case, and thus that the court below did not err in denying appellant's motion for acquittal.

¶ 18 Appellant also argues that the court below erred because it did not take into account that he was "an advanced fifty-eight years of age and has [a] negative medical condition." Brief for Appellant at 36. This is a discretionary challenge to a sentence, and it is well-settled that "[a]ppeals of discretionary aspects of a sentence are not guaranteed of right." *Commonwealth v. Cleveland,* 703 A.2d 1046, 1048 (Pa.Super.1997). An appellant must fulfill two criteria before we will review a discretionary aspect of sentencing: first, he or she must set forth a Pa.R.A.P. 2119(f) statement, which requires that "[a]n appellant who challenges the discretionary aspects of a sentence ... shall set forth in his brief a concise statement of the

reasons relied upon for allowance of appeal," and second, he or she "must articulate a substantial question as to the propriety of his sentence." *Cleveland*, 703 A.2d at 1048. Here, appellant has failed to include a Rule 2119(f) statement. While this does not automatically waive appellant's claims on appeal, "we may not reach the merits of [the] claims" where the Commonwealth has object to the omission of the statement. *Commonwealth v. Rodriquez*, 449 Pa.Super. 319, 673 A.2d 962, 968 (1996). Here, the Commonwealth has noted its objection to the omission of the statement, and we therefore hold this issue waived on appeal. *See* Brief for Appellee at 14.

¶ 19 Finally, appellant argues that he "is entitled to an evidentiary hearing. Matters raised on appeal are met with an incomplete factual and evidentiary record. A hearing should be held so that the appeal of these matters may be factually complete." *Id.* at 37 (citation omitted). We are uncertain of exactly what "factual and evidentiary" matters appellant is referring to, but because we have found that his issues on appeal are without merit, we also deny his request for an evidentiary hearing.

¶ 20 Judgment of sentence affirmed.